UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOVONEY GONZALES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-231 |
| | § | |
| RHETT DEMUNBRUN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is the defendants' motion to dismiss the plaintiff's first amended complaint under Federal Rule of Civil Procedure 12(b)(6) (Dkt. 17). The plaintiff, Jovoney Gonzales ("Gonzales"), has responded to the defendants' motion (Dkt. 20), and the defendants have filed a reply brief (Dkt. 21). After the parties filed their briefing, the Court allowed very limited discovery regarding two defendants' claims of qualified immunity (Dkt. 34). *See Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Those two defendants, Rhett DeMunbrun ("DeMunbrun") and Luis Valasquez ("Valasquez"), have moved for summary judgment (Dkt. 38).

The Court has considered the defendants' motion to dismiss, the response, the reply, all other relevant filings, and the applicable law. Since DeMunbrun and Valasquez have filed a motion for summary judgment under Federal Rule of Civil Procedure 56 asserting qualified immunity, the defendants' motion to dismiss is **DENIED AS MOOT** with respect to the claims against them. The defendants' motion to dismiss is **GRANTED** with respect to the claims against the City of Dickinson ("Dickinson").

1

## BACKGROUND

In his amended complaint, Gonzales alleges that DeMunbrun and Valasquez, who are Dickinson police officers, violated his rights under the Fourth, Fifth, and Fourteenth Amendments when they pulled him over for driving a car that was not properly registered with the Texas Department of Motor Vehicles (Dkt. 16 at pp. 3–5). Essentially, Gonzales argues that DeMunbrun and Valasquez violated his Constitutional rights by explicitly giving him permission to drive the car home from a friend's house and then pulling him over anyway (Dkt. 16 at p. 3).

According to Gonzales's allegations, Gonzales's brother, Gabriel Esparza ("Esparza"), borrowed Gonzales's car and drove it to a friend's home that was located just outside the Dickinson city limits (Dkt. 16 at p. 3). DeMunbrun, Valasquez, and a Galveston County deputy responded to a disturbance at the friend's home (Dkt. 16 at p. 3). Gonzales got a ride with his mother and came over to the friend's home to get his car (Dkt. 16 at p. 3). When Gonzales and his mother arrived, the officers, who were still investigating the disturbance, told Gonzales that his registration sticker was expired but agreed to let him drive his car home (Dkt. 16 at p. 3). Just after Gonzales got inside the Dickinson city limits, DeMunbrun and Valasquez pulled him over for driving with an expired registration sticker, arrested him, and conducted an exhaustive and destructive (and fruitless) search of his car (Dkt. 16 at pp. 3–4).

Gonzales bonded out after spending ten hours in jail (Dkt. 16 at p. 4). Gonzales's mother then filed an administrative complaint about the arrest with the Dickinson Police Department, and the Dickinson police chief determined that DeMunbrun had violated

2

Dickinson Police Department procedures during the arrest (Dkt. 16-1). The police chief punished DeMunbrun (Dkt. 16-1), and all charges against Gonzales were later dismissed and expunged (Dkt. 16 at p. 4). In the same administrative complaint, Gonzales's mother claimed that DeMunbrun was "harassing" Gonzales; the chief found no evidence to support that part of the complaint (Dkt. 16-1).

Although DeMunbrun was punished, Gonzales alleges that Dickinson violated his Constitutional rights by failing to properly train, supervise, or discipline its officers. Gonzales claims that he:

> had his rights violated and was injured due to the policies, practices, customs and procedures of the City of Dickinson including at least . . . failure to train its officers; failure to discipline officers for improper inventory procedures and unreasonable searches and seizures; failure to supervise; a code of silence; failure to fire or reassign officers; [and] ignoring a custom of violating suspect's [sic] rights regarding unreasonable searches and seizures.
> Dkt. 16 at p. 5 (list compressed into single paragraph for readability).

As evidence of Dickinson's alleged failures, Gonzales points to an earlier confrontation between himself and DeMunbrun during which DeMunbrun compelled Gonzales to provide a mouth swab for DNA:

> On a previous occasion July 20, 2015 [sic], Officer DeMunbrun had arrived at the scene where a car reported stolen belonging to [Gonzales's] mother had been involved in an accident. [Gonzales] had not been driving the car. Officer DeMunbrun ordered a DNA swab from [Gonzales's] mouth stating "we might find more than one person's DNA"—a reference to homosexual oral sex. [Gonzales] did not want to give the swab but felt he had no choice as he was ordered to do so by DeMunbrun. There was no warrant for the swab and [Gonzalez] gave no permission for the intrusive search.
> Dkt. 16 at p. 4.

Gonzales does not claim that he filed a complaint or sought any other recourse after he provided the mouth swab.

## RULE 12(B)(6) STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests a pleading's compliance with this requirement and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A complaint can be dismissed under Rule 12(b)(6) if its well-pleaded factual allegations, when taken as true and viewed in the light most favorable to the plaintiff, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). As the Fifth Circuit has summarized the applicable standard,

> [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund*, 594 F.3d at 387.

## ANALYSIS

Gonzales's live complaint does not state a facially plausible claim for relief against Dickinson.

### A. *Monell*, failure-to-train claims, and the Rule 8 pleading standard

Municipalities can be sued under 42 U.S.C. § 1983, *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978), but they cannot be held vicariously liable for the Constitutional torts of their employees or agents. *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). Municipalities are only liable for acts directly attributable to them through some official action or imprimatur. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). To establish municipal liability under Section 1983, a plaintiff "must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving

5

force is that policy or custom." *Id.* at 541–42 (quotation marks omitted). An "official policy" will generally take the form of a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the local government's officers. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010). A "custom" is generally defined as a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to fairly represent municipal policy. *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).

Municipalities are not normally liable under Section 1983 for inadequate training of employees; but the failure to properly train or supervise employees can constitute an actionable "policy" when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–90 (1989). Specifically, to state a claim for municipal liability for failure to train or supervise, a plaintiff must allege facts showing: (1) that the municipality's training and supervisory policies and practices were inadequate; (2) that the municipality was deliberately indifferent in adopting its training and supervisory policies and practices; and (3) that the inadequate training and supervisory policies and practices directly caused the violation of the plaintiff's Constitutional rights. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *see also Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 286 (5th Cir. 2002). "Deliberate indifference is more than

6

mere negligence" and goes beyond even gross negligence. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000); *see also Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) ("While we previously have observed that the terms 'gross negligence' and 'deliberate indifference' are sometimes used interchangeably, understood properly, the former is a heightened degree of negligence, while the latter is a lesser form of intent.") (quotation marks omitted). Given that high standard, "[p]roof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of her constitutional rights." *Cozzo*, 279 F.3d at 286–87. "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (brackets and quotation marks omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005) (rejecting a proffered pattern where it required "an excessively high level of generality").

The Supreme Court has rejected the application of a heightened pleading standard to Section 1983 claims against municipalities. But it did so in an opinion, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993), that predated *Twombly*; and courts have split on the question of what, if any, effect *Twombly* had on *Leatherman*'s precedential value. *See Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 841–42 (S.D. Tex. 2011) (Ellison, J.) (extensively examining split in caselaw). This Court has reconciled *Leatherman* and *Twombly* by "requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a

7

policy[.]" *Id.* at 844. "Where a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Id.* at 844–45 (quotation marks omitted).

### B. The plaintiff has not sufficiently alleged a claim for relief against Dickinson.

In both his original and amended complaints, Gonzales's claims against Dickinson feature little more than generic, boilerplate allegations. As stated above, Gonzales baldly claims that he:

> had his rights violated and was injured due to the policies, practices, customs and procedures of the City of Dickinson including at least . . . failure to train its officers; failure to discipline officers for improper inventory procedures and unreasonable searches and seizures; failure to supervise; a code of silence; failure to fire or reassign officers; [and] ignoring a custom of violating suspect's [sic] rights regarding unreasonable searches and seizures.
> Dkt. 16 at p. 5 (list compressed into single paragraph for readability).

No facts are pled to support any of these claims. Even though Gonzales attempts to establish a pattern of Constitutional violations by pointing to a prior run-in that he had with DeMunbrun, that prior confrontation is dissimilar to the traffic stop and arrest at issue in this case. Moreover, Gonzales did not file a complaint or seek any other recourse after the first confrontation with DeMunbrun; and the Dickinson police chief in fact punished DeMunbrun after Gonzales's mother filed an administrative complaint about the arrest that forms the basis of this case. At bottom, the facts pled certainly demonstrate

8

personal animus between Gonzales and DeMunbrun—Gonzales's mother, the Court notes, claimed in her administrative complaint to the Dickinson police chief that DeMunbrun had been "harassing" Gonzales—but do not show any failings in the Dickinson Police Department's training program or disciplinary practices. On the facts alleged, Gonzales has not established any basis on which Dickinson could be held liable under *Monell*. Gonzales has failed to state a facially plausible claim for relief against Dickinson.

## CONCLUSION

The defendants' motion to dismiss the plaintiff's first amended complaint (Dkt. 17) is **GRANTED IN PART AND DENIED AS MOOT IN PART**. The Court **GRANTS** the defendants' motion to dismiss as to the plaintiff's claims against the City of Dickinson. The Court **DENIES AS MOOT** the defendants' motion to dismiss as to the plaintiff's claims against Rhett DeMunbrun and Luis Valasquez. The City of Dickinson is **TERMINATED** from this lawsuit.

**IT IS SO ORDERED.**

SIGNED AT GALVESTON, TEXAS, on September 20, 2018.

*/s/ George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE